John Mansfield (Bar #214848)
john@mansfieldlaw.net
**MansfieldLaw**
1001 Bayhill Drive, 2nd Floor
San Bruno, CA 94066

Matthew M. Wawrzyn (*pro hac vice*)
matt@wawrzynlaw.com
Stephen C. Jarvis (*pro hac vice*)
stephen@wawrzynlaw.com
**Wawrzyn LLC**
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
312.283.8330

*Counsel for William Grecia*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

William Grecia,

Plaintiff,

v.

VUDU, Inc. and Digital Entertainment Content Ecosystem (DECE) LLC,

Defendants.

Case No. 3:14-cv-01220-EMC,
Related to Case No. 3:14-cv-00775-EMC

**Second Amended Complaint**

## PARTIES

1. Plaintiff William Grecia lives in Downingtown, Pennsylvania.

2. Defendant VUDU, Inc. is a corporation organized under the laws of Delaware, with its principal place of business located in Santa Clara, California.

3. Defendant DECE is a company organized under the laws of Delaware, with its principal place of business located in Pleasanton, California.

**Jurisdiction and Venue**

4. This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

6. This Court may exercise personal jurisdiction over VUDU and DECE, both of whom conduct continuous and systematic business in California and this District. This patent-infringement claim arises directly from VUDU's and DECE's continuous and systematic activity in this District. In short, this Court's exercise of jurisdiction over VUDU and DECE would be consistent with the California long-arm statute and traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(b).

**Background**

8. William Grecia owns United States Patent 8,533,860 (the "'860 patent") and at least one continuing application claiming back to the original priority date of March 21, 2010. William Grecia invented the methods and products claimed in the '860 patent.

9. The field of the invention of the '860 patent is digital rights management, commonly referred to as "DRM." The movement of books, movies, and music to digital form has presented a challenge to the copyright owners of the content. The owners wish to sell the content in a digital form and transfer all attributes of ownership to the buyer, and yet the owners of the content must protect value by preventing "pirating" of the content through illicit copying.

10. DRM schemes to date had locked the purchased content, a movie for example, to specific devices and in some cases limited playback rights to a single device. These prior art DRM methods required the content providers (a movie studio in the example) to maintain computer servers to receive and send session authorization keys to clients, and the prior DRM methods required that the client reconnect with the servers to

obtain reauthorization. These DRM schemes may be characterized by limiting acquired content to a specific device that the client continually had to reauthorize to enjoy the acquired content.

11. The ‘860 invention provides a solution. With this invention, a consumer of digital content may enjoy the content on a multiple number of the consumer's devices and share the content with the consumer's friends and family, all while protecting against unlicensed use of the digital content.

**Count 1: Claim of Direct Patent Infringement Against VUDU**

12. William Grecia is the exclusive owner of the ‘860 patent, which is attached as Exhibit 1.

13. The ‘860 patent is valid and enforceable.

14. VUDU has and is directly infringing claims of the ‘860 patent. VUDU makes, uses, sells, and offers for sale methods, equipment, and services that practice claims 1, 2, 3, 4, 5, 9, and 10 of the ‘860 patent.

15. For example, and without limiting the claims of the ‘860 patent that will be asserted, VUDU's cloud computing service directly infringes claim 1 of the ‘860 patent.

16. Claim 1 is "[a] method for authorizing access to digital content using a cloud system . . . ." VUDU practices a method of authorizing access to digital content—such as movies—using a cloud computing system.

17. The method of claim 1 is one "facilitating access rights between a plurality of devices . . . ." VUDU facilitates access rights to movies among a plurality of devices.

18. According to the method of claim 1, a read or write request of metadata of the digital content is received. This request comprises a verification token of a user, such as the user's email address and password. VUDU receives a content access request from the user's device when the user requests access to her digital content by requesting that VUDU write her email address and password to metadata of the digital content.

19. In claim 1, after the verification token has been authenticated, a connection is established between a communications console and a server. The connection is established through a web service capable of facilitating a two-way exchange between the console and the server. After the VUDU user's verification token has been authenticated, VUDU establishes a connection between the user's device and DECE's UltraViolet web services by presenting the UltraViolet login screen using UltraViolet's coordinator Application Programmable Interface ("API").

20. VUDU is party to a contract with DECE called "UltraViolet License Agreement." According to the contract, VUDU pays DECE fees in exchange for the provision of coordinator services. The coordinator services are provided to VUDU under the direction and control of VUDU.

21. Next, claim 1 involves the step of requesting an identification reference, such as a verified web service account identifier. VUDU (through the coordinator services for which VUDU contracted) requests an identification reference—the user's Ultraviolet username and password—from the communications console in order to connect the user with the content associated with the user's verification token and identification reference.

22. Next, according to claim 1, the identification reference is received from the communications console. VUDU (through the coordinator services for which VUDU contracted) receives an identification reference.

23. Finally, claim 1 involves writing either the verification token or the identification reference into the metadata. VUDU (through the coordinator services for which VUDU contracted) writes, among other things, the user's VUDU verification token or the identification reference into the metadata stored, authorizing the user access to the content stored.

**Count 2: Claim of Indirect Patent Infringement (Inducement) Against DECE**

24. DECE has knowledge of the '860 patent and nonetheless actively induces VUDU to directly infringe the '860 patent.

25. DECE's knowledge of the '860 patent is based on, among other things, DECE or individuals acting on DECE's behalf disclosing the '860 patent to the United States Patent and Trademark Office as relevant prior art in case 13/436,567. This admission by DECE that the '860 patent is relevant to the DECE ecosystem demonstrates that DECE specifically intends that VUDU infringe the '860 patent and that DECE knows that VUDU's acts constitute infringement.

26. DECE's specific intent to induce VUDU to infringe the '860 patent is also evidenced by correspondence between DECE and Grecia according to which, having knowledge of the '860 patent disclosure, DECE invites Grecia to become a member of DECE.

27. The contract between DECE and VUDU also establishes a specific intent on the part of DECE to induce VUDU to infringe the '860 patent. That contract provides, among other things, "Ecosystem Specifications." The Ecosystem Specifications when practiced by VUDU and DECE on behalf of VUDU constitute an infringement of the '860 patent.

28. DECE has knowledge that DECE, by requiring VUDU through contract to comply with the Ecosystem Specifications, is inducing VUDU to infringe the '860 patent. Among other things, on May 28, 2014, Grecia disclosed to DECE claim charts that demonstrate that practicing the Ecosystem Specifications constitutes infringement of the '860 patent.

29. DECE has a contractual relationship with VUDU. According to this relationship, VUDU is directly infringing claims of the '860 patent. VUDU makes, uses, sells, and offers for sale methods, equipment, and services that practice claims 1, 2, 3, 4, 5, 9, and 10 of the '860 patent. DECE induces each of these infringements.

**Prayer for Relief**

WHEREFORE, William Grecia prays for the following relief against VUDU and DECE:

(a) Judgment that VUDU has directly infringed claims of the '860 patent claims;

(b) Judgment that DECE has induced VUDU to directly infringe the '860 patent claims;

(c) For a fair and reasonable royalty;

(d) For pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

(e) For such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

William Grecia demands a trial by jury on all matters and issues triable by jury.

Date: October 3, 2014

*/s/ Matthew M. Wawrzyn*

John Mansfield (Bar #214848)
john@mansfieldlaw.net
**MansfieldLaw**
1001 Bayhill Drive, 2nd Floor
San Bruno, CA 94066

Matthew M. Wawrzyn (*pro hac vice*)
matt@wawrzynlaw.com
Stephen C. Jarvis (*pro hac vice*)
stephen@wawrzynlaw.com
**Wawrzyn LLC**
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
312.283.8330

*Counsel for William Grecia*